CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| CABALLO COAL COMPANY, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. ___0822-CC08875___ |
| | ) |
| LUMINANT GENERATION COMPANY, | ) |
| LLC, f/k/a TXU GENERATION | ) |
| COMPANY, LP, | ) |
| | ) |
| Defendant. | ) |

**PETITION**

COMES NOW Plaintiff Caballo Coal Company ("Caballo"), and for its Petition against

Defendant Luminant Generation Company, LLC, formally known as TXU Generation

Company, LP ("Defendant"), alleges as follows:

**PARTIES**

1.    Caballo is a Delaware corporation with its principal place of business in

Campbell County, Wyoming.  Caballo and its affiliates operate the Caballo Mine and the

Rawhide Mine, surface coal mines located in Campbell County, Wyoming.  Caballo is an

indirect subsidiary of Peabody Energy Corporation. Pursuant to a contractual agreement,

Caballo conducts business and administers its contracts through COALSALES II, LLC, also an

indirect subsidiary of Peabody Energy Corporation. COALSALES II, LLC and Peabody Energy

Corporation are headquartered in St. Louis, Missouri.

2.    Defendant is a limited liability corporation duly organized and validly existing

under the laws of the State of Texas.  Defendant's principal place of business is Dallas, Texas.

Defendant purchases coal from Caballo's Rawhide Mine or another substitute coal source as

agreed by the parties.

**EXHIBIT**
**"C"**

4589318

## JURISDICTION AND VENUE

3.      Defendant is subject to personal jurisdiction in this state pursuant to Mo. Rev. Stat. § 506.500 by virtue of making contracts and transacting business within this state. Pertinent contract records are kept in St. Louis, Missouri, and Defendant has conducted business on the matter at issue in St. Louis, Missouri.  Monthly invoices are sent by Caballo's representatives from St. Louis, Missouri to the Defendant and payment is remitted by Defendant to bank accounts controlled and accessed by Caballo's representatives and agents in St. Louis, Missouri.  As a result, Defendant has had continuous and systematic contacts over the past several years with the forum in the form of electronic mail, teleconferences, letters, discussions, and contract drafts and negotiations from Texas to Missouri.   Additionally, Defendant has visited Caballo's representatives in St. Louis, Missouri to discuss matters relating to their contractual relationship.

4.      Venue is proper in this Court in that the cause of action accrued in St. Louis, Missouri.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

5.      This lawsuit arises from a dispute regarding certain invoices Caballo submitted to Defendant for payment pursuant to the parties' contract.

6.      The parties' contractual relationship began in November, 2003, when Caballo, through its representatives, submitted a bid proposal to Defendant for the supply of coal to Defendant from the Rawhide Mine.

7.      On or about November 19, 2003, Defendant confirmed receipt of Caballo's bid proposal through a letter sent via facsimile to Caballo's representatives in St. Louis, Missouri. The confirmation letter states that Caballo's proposal is acceptable to Defendant "conditioned

4589318                                            - 2 -

upon the negotiation and execution of a mutually acceptable coal supply agreement which shall contain, among other provisions, . . . governmental impositions acceptable to both parties."

8.     Defendant negotiated the terms of a coal supply contract for the transaction with Caballo through multiple comments and additions to draft agreements communicated to Caballo's representatives in St. Louis via electronic mail, facsimiles, FedEx, and/or other methods, and discussed with Caballo through various media, including teleconferences and/or electronic mail. The parties' negotiations continued from November, 2003, through mid-December, 2004.

9.     On or about December 14, 2004, the parties entered a Master Coal Purchase and Sale Agreement (the "CSA"), selecting Texas law as the governing law. The CSA is dated effective as of November 19, 2003.

10.     Under the CSA, the parties may enter binding coal purchase transactions pursuant to the terms of the CSA and a "Confirmation" executed for a particular transaction. The CSA defines a Confirmation as "a written, fully-executed confirmation of a Transaction ... which will bind the Parties to perform such Transaction, in accordance with the terms and conditions set forth therein" and in the CSA. CSA, § 1.7.

11.     On or about December 14, 2004, Defendant executed a Confirmation with Caballo. Under the CSA, the terms and provisions of the Confirmation constitute an integrated part of the CSA, and the Confirmation is to be read and construed with the CSA. Where there is conflict between the CSA and the Confirmation, the Confirmation prevails. CSA, § 2.1.

12.     The CSA describes the confirmation price for coal purchased pursuant to the CSA and the Confirmation:

> The Confirmation Price for each Transaction will be F.O.B. Seller's Mine, inclusive of all federal, state or any other levies of any kind relating to the mining, beneficiation, production, sale, use and loading of coal for Buyer or in any way accrued or levied against Seller or the production of coal prior to the

4589318                                    - 3 -

transfer of title of coal to Buyer ("Seller Expenses") (including, without limitation, any royalties, state severance and ad valorem production taxes, sales and use taxes, ad valorem property taxes, the cost of regulatory compliance, reclamation fees, Black Lung benefits and statutory levies of any kind) as of the applicable law date set forth in the confirmation that governs the transaction for coal . . .

CSA, § 5.1.

13.     As part of the confirmation price, the CSA also requires Defendant to pay Caballo for governmental impositions adjustments that are "enacted, altered or amended effective after the 'Applicable Law Date' specified for such Transaction, which affect the cost of producing and selling coal subject to such Transaction." Governmental impositions "includ[e], without limitation, all federal, state and any other levies of any kind, state severance and ad valorem production taxes, ad valorem property taxes, state sales and use taxes, the cost of regulatory compliance, reclamation fees and Black Lung benefits." CSA, § 5.2.3.

14.     On or about September 28, 2007, Caballo notified Defendant pursuant to the CSA of an increase in the base price per ton under the Confirmation due to certain governmental impositions that affected the price of coal sold under the CSA and the Confirmation. Caballo notified Defendant that the increase in the base mine price per ton would take effect as of October 1, 2007. Since October 1, 2007, Caballo has billed Defendant for coal sold pursuant to the CSA and the Confirmation, and the coal invoices reflect the governmental imposition referred to herein.

15.     On or about October 5, 2007, Defendant sent a letter to Caballo disputing Caballo's right to increase the base mine price per ton to reflect the governmental imposition referred to herein. Defendant has failed and refused to pay the governmental imposition amounts that Caballo began billing as of October 1, 2007.

16.     On or about November 29, 2007, in accordance with CSA § 8.2, Caballo mailed Defendant a Confidential Dispute Notice reflecting the dispute between the parties regarding

the governmental imposition amounts that Defendant has failed and refused to pay. Caballo indicated a desire to engage in an informal dispute resolution procedure relating to the dispute.

17.     Defendant has not responded to Caballo's request for informal alternative dispute resolution. CSA § 8.2 states that "[a]ny dispute that is not resolved nor committed to final and binding resolution by means of an Informal Procedure within ninety (90) days of the date of the Dispute Notice was received by the other Party may be resolved by either Party pursuant to any and all rights and remedies available under law or equity except as limited in this Agreement." Thus, Caballo brings this action seeking declaratory relief and damages for breach of contract.

**CAUSES OF ACTION**

**COUNT I – BREACH OF CONTRACT**

18.     Caballo incorporates paragraphs 1 through 17 above as though set forth fully herein.

19.     Caballo has a valid contract with Defendant. The CSA, by its terms, fully incorporates the Confirmation entered between Caballo and Defendant.

20.     Caballo has performed all conditions precedent under the CSA and the Confirmation.

21.     Defendant has materially breached the CSA and the Confirmation by failing to pay the portions of the invoices submitted to Defendant from and after October 1, 2007, reflecting the governmental impositions adjustments.

22.     As a direct and proximate result of Defendant's material breach, Caballo has suffered, and will continue to suffer, substantial financial damages, including compensatory and consequential damages in an amount well in excess of $25,000.00.

## COUNT II – DECLARATORY JUDGMENT

23.     Caballo incorporates by reference the allegations of Paragraphs 1 through 22 as though set forth fully herein.

24.     Caballo and Defendant are signatories to the CSA, which places the obligation upon Defendant to pay governmental impositions as provided in § 5.2.3.

25.     Defendant has indicated an unwillingness to pay the governmental impositions adjustments referred to herein. For this reason, an actual justiciable controversy exists concerning the parties' rights and obligations under the CSA.  The controversy is ripe for adjudication now.

26.     Caballo is entitled to a declaration under 28 U.S.C. § 2201 that Section 5.2.3 of the CSA requires Defendant to pay the governmental impositions described herein and Defendant is in default of the CSA for failure to pay the invoice.

27.     Accordingly, Caballo requests that this Court enter a declaratory judgment pursuant to 28 U.S.C. § 2201 as follows: declare that the Master Coal Purchase and Sale Agreement obligates Defendant to reimburse Caballo for the governmental impositions described herein.

WHEREFORE, Caballo requests the following relief:

(a)     declaring Caballo's rights under the Master Coal Purchase and Sale Agreement and the Confirmation as requested above;

(b)     awarding compensatory damages in an amount to be proven at trial caused by Defendant's breach of contract;

(c)     awarding attorneys' fees and costs; and

(d)     awarding such other and further relief as the Court deems just and proper.

4589318                                                    - 6 -

Respectfully submitted,

THOMPSON COBURN LLP

By _____
    Roman P. Wuller, #36115
    Christopher M. Hohn, #44124
    One US Bank Plaza, Suite 2600
    St. Louis, Missouri 63101
    314-552-6000
    FAX 314-552-7000

    Attorneys for Plaintiff
    Caballo Coal Company

4589318